This next case is case number 4-16-0768, People v. Palanzo-Hixson. Appearing for the defendant is Attorney Akshay Matthew, Chief of Counsel, and for the appellees, Attorney Luke McNeil. Good afternoon, gentlemen. Mr. Matthew, are you ready to proceed? You may. May it please the Court, Counsel. My name is Akshay Matthew, and I represent Palanzo-Hixson in this appeal. Palanzo-Hixson's 55-year-old, 55-year de facto life sentence, which was imposed for a crime committed when he was 17 years old, violated the Eighth Amendment's ban on cruel and unusual punishment. In sentencing Palanzo, the trial court failed to properly consider the factors established by the U.S. Supreme Court in Miller and the Illinois Supreme Court in Holman. This Court should therefore remand this cause for a new sentencing. In Miller, the United States Supreme Court banned mandatory life sentences without parole for all juveniles except for the rarest of juvenile offenders whose crime reflects permanent incorrigibility and those who are unable to ever achieve rehabilitation. Illinois has further extended Miller to include any juvenile sentenced to a de facto life sentence, which is a sentence which cannot be served within one's lifetime. When you say Illinois, you mean appellate courts or the Illinois Supreme Court? The Illinois Appellate Court, and then Reyes, that was also, the Supreme Court also acknowledged that. Are you saying the Illinois Supreme Court has a decision where they have said that discretionary de facto is subject to the Miller factors? No, but it's being considered in buffer. So Palanzo was 17 years old when the offense occurred, which with his 55-year imprisonment he would not be released from prison until the age of 72. Now the U.S. Sentencing Commission has calculated the life expectancy of the general prison population to be 64 years old. In buffer and in Sanders, the appellate court considered this report in coming to their determination on whether a sentence was a de facto sentence, and they both found in both those cases that the sentence was a de facto sentence. And I believe that was 62 years and 68 years and 66 years. And what did they base those findings on? Partly due to the life expectancy, and they cited both those cases, the U.S. Commission Sentencing Report, which determined it to be 64 years for the life expectancy of the average prison population. Is that federal prison? I would assume so because, yeah. They're taking into consideration whether persons had been incarcerated, then released and committed new crimes and were reincarcerated. That I do not know, but I have cited other studies in my opening brief, which shows that extended incarceration tends to reduce that life expectancy even longer than the back and forth. But when you say prison reduces a life expectancy, are you relying then upon the Social Security Administration life expectancy? There has to be some basis from which the reduction occurs. The general Social Security would be for the general population. Most figures are around the 79 to 80 mark for the average United States population. And there's differences based on race as well. Is that what you're asking, Your Honor? When you suggest that prison time reduces life expectancy, there has to be a base from which you're starting. So you are using Social Security as the base to start then for that.  I don't recall what the specific studies rely on. It could be census data or any sort of thing like that. But the studies itself show a reduction from the baseline number they have of the U.S. population. I know the first district, they have cases all over the place. I'm not sure you're well aware of that. There are at least a couple of cases that have said that it really isn't an undertaking that a reviewing court such as the appellate court should take because who are we to know what a de facto life sentence is? In fact, I would suggest to you that why wouldn't this court wait for a bright line rule like the 18 versus 17, which the United States Supreme Court said they were willing to accept. It would seem maybe that's something a court like ours, a middle reviewing court, would need for guidance before we with our rogues just decide that 58 or so cases, I know one of them is Evans, seem to make sense. We acknowledge that Buffer may likely be that case where the Illinois Supreme Court could establish a bright line rule. I think it was Evans where the first district did waver on establishing any sort of rule. But to the contrary, on Buffer and Sanders, they relied on data to kind of not specifically pinpoint, but get to that 64 number. And we're not asking for a bright line rule necessarily because this 72 figure is so far from what any other Illinois Supreme Court has found not to be de facto. The closest would be the first district said 68 years was not de facto. And even there, the court said although the defendant's age upon release would fall toward the end of his lifespan, so even there they acknowledge that that's probably around the upper edge of a prisoner's lifespan. So we're not asking for a bright line rule in this particular case because it's so far from what studies have shown that the average was as well as what prior courts have found to be de facto life. Are the individual characteristics of the defendant to be taken into account by the court in determining whether it's a de facto life sentence for that defendant? In other words, does the health of the defendant at the time of sentencing play any part in the analysis? It may, Your Honor, because Miller's requirement is that the juvenile should have some meaningful opportunity to obtain release. So when you consider that, if they are likely going to die much younger than the average person, that may be a factor. That's not an issue in this particular case because there's nothing on the record pointing one way or another about Lonzo's health. Well, it might come into play. You're requesting alternative relief. You're requesting remand for second stage proceedings. Conceivably, it might present something that indicates that the defendant has some genetic issue or something in his family that would cause him to have a reduced life expectancy, which would then potentially weigh in favor of a binding of de facto life sentence. I'm just curious if the court is to look at something beyond just the defendant's age in making the determination. The Miller considerations are based on the cold record. So evidence presented at the second or the third stage wouldn't necessarily, it should be based on what was available at sentencing. And at sentencing, there was no, nothing regarding Mr. or Lonzo's health or no testimony regarding that. So that wouldn't be an appropriate inquiry for the third stage because it's based on the cold record that this determination is made. Does that answer your question? You answered it. Thank you. Now, once a reviewing court determines that a sentence is de facto life, the next step in the analysis is to determine whether the trial court made a finding of permanent incorrigibility and considered all five of the Holman factors. I'll start by discussing the permanent incorrigibility. Here, Miller bars life without parole for all but the rarest of juvenile offenders. And Miller emphasized that life sentences are only appropriate when a juvenile exhibits irretrievable depravity where rehabilitation is impossible and life without parole is justified. Now, the trial court did not make an express finding or an inclined finding that Lonzo was incapable of rehabilitation. In fact, this court even stated on appeal from his first post-conviction petition that he had low rehabilitation potential. And the state at one point in the brief also said the same, that he had low rehabilitation potential. Now, Miller requires that the rare juvenile who has no rehabilitative potential can only be sentenced to life without parole. And that's not what we have here. The trial court didn't make that finding and the cold record shows that that is not the case. Are you suggesting, counsel, that a court has to say with 100 percent certainty that the juvenile has no rehabilitation potential? Because I'm suggesting to you that seems to be a standard that can never be met. Do you mean, are you asking, Your Honor, if they have to state those specific words? Well, I think your argument is because the trial court, not the trial court, our court, in the state in its brief said that there's low rehabilitation potential, that that can't meet the standard of permanent incorrigibility. That suggests to me that you're saying there has to be a 100 percent finding that there's no rehabilitation potential. And if you are, I'm suggesting to you that's an impossible standard to meet. And it would seem to me that if a court could find, I don't know, if it would be by a preponderance of the evidence, clear and convincing evidence, or maybe just beyond a reasonable doubt that a juvenile could not be rehabilitated, that would suffice under the Miller language. What would be your response to that? The quote I have from Miller is that they have to show that rehabilitation is impossible. So Miller itself uses that language, impossible. Miller says impossible. I'm asking. I don't know. I don't remember seeing that language. I'll double check. I have the case with me, and I'll double check on rebuttal. But I have it quoted here, and I believe that language is from Miller, or a case citing Miller, where it says rehabilitation is impossible. And even besides that, Miller makes it very clear that this should be uncommon. It's the rarest of juveniles. It should, as Your Honor has said, it should be very unlikely that juveniles are so irretrievable, have such irretrievable depravity that they must be sentenced for the rest of their life. One would hope that juveniles, most juveniles are capable of changing. It's part of being human that we make mistakes when we're young. And here, regardless, here the trial court looked at Flonzo pretty much as an adult. At one point the court states, whether you're 18, 28, 30, or 98, committing this kind of murder will result in a sentence, which will have you dealing with family members when they're old people, if you live out your sentence. So he's comparing him to adults, and he's saying, the trial court is saying that to deter, for deterring adults, that this is going to be a sentence that you're going to be very old. And considering the other cases where courts have found, including this court has found, that the finding of permanent incorrigibility, the, I mean, any murder is a serious crime. But in those cases, the murders are much more heinous. For example, in Stafford, the person, the defendant stabbed the victim over 40, 45 times. And same thing in Croft. In Croft also, he kidnapped, raped, and murdered a 16-year-old girl. In Holman, he went on an 8 to 11 person killing spree. That's not what we have here. We have a single murderer, it could be gang-related or drug-related murder. It's an unfortunate murder, but it's compared to where other courts have found permanent incorrigibility. This is not as heinous as those crimes. Further, with regards to the Holman factors, the court didn't consider three of the Holman factors. First is the juvenile defendant's chronological age. The court explicitly said that Falonzo was 18, which he was 17 at the time of the offense. So that shows that the court didn't consider his chronological age at the time of the offense. I thought the court said it considered arguments of counsel, didn't it? And both the state acknowledged that he was 17 at the time of the offense, and defense counsel argued vehemently that he was 17 at the time of the offense. So if the court considered arguments of counsel and counsel argued that, I think you have to concede that the court did take into consideration that this person was 17 when the crime was committed. Wouldn't you agree with that? I would add, Your Honor, that when the state did make that argument, the exact quote it stated was, Falonzo was 17 years of age and an adult. And at that time, 17 was considered an adult. So even if the court looked at it as 17, the court still viewed Falonzo as an adult, not as a juvenile. That, along with expressly comparing him to 18, 28, 38-year-olds, and referring to him as being of 18 years of age, that shows that the court didn't consider him as a juvenile and consider the characteristics of juveniles, which is the immaturity, impetuosity, and the failure to appreciate risk and consequences. Now, yeah, this crime is like the archetype of a juvenile crime of someone who's young, who doesn't appreciate the risk of prison, is trying to impress his peers. The first thing he does... At trial, there was the main witness against Falonzo was Andre Gordon, who was an older gang member. And I believe it was... I can't remember specifically if it was at trial or it was police reports, but he stated that he's affiliated with gangs and that younger members of the community looked up to him for his gang involvement. And Falonzo had testified that that's where he bought his drugs from. So this is an older member, gang member, that exerted this influence on him to be out there selling drugs, and that's what eventually resulted in the murder. And the first thing Falonzo did after the murder was go around and tell everyone that he had shot a rival gang member to impress his peers. So this is an archetype of the type of crime that juveniles tend to commit. And the remedy we ask here is that we would request a new sentencing hearing. That is the remedy that was offered by the first district in Nieto, as well as a few other cases, and the third district recently in Lusby also provided that remedy. Because we're looking at it from a cold record, further evidentiary hearings would not be beneficial. Would you agree that we don't get to the Miller factors unless we decide that it's a de facto life sentence? Yes, Your Honor. Okay, and what's your strongest point? I mean, we've talked about a number of things that makes this a de facto life sentence. That it was way older than even the most recent. The closest Illinois court case is 68 years for Hoy, and this is four years past that. Okay, so if the sentence was for 50 years, we wouldn't be here? 50 years, we'll put it at 67, 68. We're still 45 years. Perhaps not. Evans was 62 years old. I would say anything below 60, we probably wouldn't be here. I see my time is up. Thank you, Your Honors. We have time in rebuttal. Mr. McNeil, response? Your Honors, may it please the Court. People v. Reyes, Justice Turner asked a question about the Supreme Court case. That was an 89-year sentence that the Court stated was, quote, a de facto life sentence. So that would be the closest Supreme Court authority on this. Obviously that would put the defendant in that case at 105 years old, so it's not much help as to cases here and cases like this where the defendant is clearly sentenced to a sentence that is survivable. That was a mandatory de facto. This is a discretionary. Correct. So discretionary, there is no Supreme Court case on the point. As for the de facto life sentence argument here, trial court used a method that the defendant doesn't agree with, that the State agrees with. They looked at the objective Social Security Administration lifespan calculator that says that the average lifespan of someone's defendant's age is 82 years old. That's 10 years less than what a defendant would be when he gets out of prison. The standard of a de facto life sentence, the definition is the functional equivalent of life without the possibility of parole. This sentence is survivable. It's survivable even if the defendant lives to be the average age of a person born on his date. As the Hoy Court stated, although the defendant's age upon release would fall towards the end of his lifespan, this sentence is survivable and thus cannot be considered the functional equivalent of life without parole. Same here. The defendant will be four years older than the defendant in Hoy, which is the, I guess, oldest, if we're going to look at the raw numbers of it, would be the oldest published authority that states it's not a de facto life sentence. Buffer might clear some of this up and might come with a more bright-line rule of what should be considered a de facto life sentence. I would argue that the most objective, the fairest, and the easiest way to determine that is the exact way the trial court did here, and that's the average lifespan of a person's defendant's age. Again, as Justice Turner sort of pointed out, there's a hard line at 18, and that's kind of important in this case. Just as the Illinois Supreme Court found last week, Miller and his progeny isn't available to anyone past the age of 18. I think that was People v. Harris. It's not applicable to this case, but that's what the Supreme Court found. Defendant was only two weeks shy of his 18th birthday when he did this There should be an objective, hard-line rule as to what constitutes a de facto life sentence. Even if we're generous and say that the old common 80, 40 is over the hill or whatever, 80 being the average lifespan, still defendants, defendant would be out with substantially more time than the average person. And again, it's true, defendant may die in prison, but the average lifespan in prison is shorter for a multitude of reasons. None of them have to do with predicting someone's lifespan who follows a straight and narrow in prison and can survive the sentence. Well, you're just conceding that his lifespan is going to be shorter. No, I'm saying that the mean will go down based on people in prison who may commit suicide or whatever. The mean will go down based on any certain, any endless number of criteria. Death, that would be the criteria. But being in prison, which prison, gender, race, ethnicity, all of these have different lifespan calculations. We're talking about Illinois, and we know that Illinois provides lousy treatment to anybody that has any mental health issues. And this young man said that he suffered from depression. He has had minimal rehabilitation that we are aware of. He's had many chances of rehabilitation, and none of them were successful. You get a chance at rehabilitation by going to the DOC? I think the main objective of juvenile corrections is rehabilitation. Does it occur? I would hope so. Not in this case. Defendant was in constant custody from 13 to 18 with only 8 months out of custody. As this court stated, as this court quoted, an increasingly escalating display of criminal activity resulting in this murder. The point being that any defendant, if we do take, as Justice Harris says, their individual characteristics, I would submit that any defendant can craft some criteria that shortens his lifespan sufficiently enough that they can call whatever their lengthy sentence is a de facto life sentence. And that would be a burden on reviewing courts that there simply shouldn't be. As the Jackson court stated, these factors, these policy considerations are better handled in a different forum. What forum would that be? The legislature, a bright line rule from the Illinois Supreme Court, but mainly probably the legislature and any maximum sentencing guidelines for juveniles, such as this one that committed murder. The trial court's factors here, their determination in finding that this was not a de facto life sentence was proper and I would state the most objective and fairest way to determine. So that was properly found to be not a de facto life sentence by the trial court. Yes? Is there a case that says that in this context you have to first determine whether or not it was a de facto life sentence before you apply the Miller factors? Or can it be like the application of the plain error analysis where you can sidestep the first issue of whether or not there was an error and go to the second prong determination? Here, can you say, okay, assuming that it was a de facto life sentence, the trial court applied the Miller factors or we can glean the Miller factors? Are you talking about Holman maybe? The Holman sentencing factors? Yeah, actually, I may not be correct in what I'm saying about the Miller factors in this context. Are you talking about what a trial court has to consider as to defendant's youth and attendant characteristics? I think those factors were laid out in the Holman case, the Illinois Supreme Court case. No, and those only apply to cases where Miller applies. Miller, again, I don't know if there's any... I don't know if Montgomery was a discretionary or mandatory life without parole sentence. I don't know if there's any U.S. Supreme Court authority that has held as to what is a de facto life sentence or not. I don't think there is. I think that stems from Reyes in Illinois. But Holman, no, the first step is to determine whether it is a de facto life sentence. Then if we determine it is, for the sake of argument, let's say it is now the trial court properly sentenced defendant here and the trial court properly found that in this successive petition. What about counsel's argument that this court and your brief says that defendant here had a low rehabilitation... I mean, I think we both know with the context that low was used in both of those situations, meaning not high. It wasn't meant to say low, but not high. Well, I'm not sure that's what I'm asking. His response was Miller says that rehabilitation is impossible. I assume you don't agree with that. Of course not. And later in my brief on page 19, I quote the court, or I paraphrase the court, finding that defendant's rehabilitative potential is nonexistent. So I don't... Why wasn't he given the maximum sentence? I couldn't tell you and I couldn't step in the trial court's shoes. There was a factor in mitigation, right? The defendant's trial? There was a factor in the mitigation as to defendant's trial. There was no finding of hardship as to defendant's trial. I don't think there was any... If he's incorrigible and depraved and essentially none or little chance of rehabilitation, then if I'm the trial court and that's the conclusion I've made, isn't he deserving of the maximum sentence? There was also other mitigating factors. What were they? Defendant's youth. Oh. The trial court considered counsel's argument. Counsel strongly stated that defendant's youth was a very strong mitigating factor. Maybe that swayed the judge from the maximum. Again, especially considering this is a survivable sentence. So it's not a de facto life sentence. The trial court, but did go over the considerable factors in Holman and they all weigh heavily in favor of the state. And this court, most importantly in Stafford, I think that was... Was that UJustice Connect? I'm not sure. I think it was, but I didn't check the names before I came in here. In Stafford, the court stated that there doesn't need to be the specific words said by the trial court in sentencing the defendant. It needs to convey a finding of permanent incorrigibility and an inability to rehabilitate. That's exactly what happened here. And I would submit that that's exactly the picture that this court put out, displayed in this affirmation of the denial of defendant's first post-conviction petition. Where does this sentence fall on the spectrum of those cases that have concluded a sentence of this length? Would or would not be a de facto life sentence? I mean, there are a number of Illinois cases. There's a number of cases and there will be, just in my own experience, there will be more probably unpublished Rule 23 opinions coming down the pipe in all districts. But this would be, again, this would be, I guess if it's a published opinion, be the highest age considered not a de facto life sentence. But again, I would submit that the Evans Court and the Hoy Court both rejected any of the actuarial tables or calculating that for a more objective approach. And if those sentences, I think if they were before those panels, if the sentences were this and a defendant got out at age 72, I feel like they would say the same. Their sentiment is the same as this. An average person will live longer than 72. Therefore, he has a possibility of life outside of prison walls, which is all that Montgomery, their most recent U.S. Supreme Court authority, guarantees. This is not the functional equivalent of a life without parole sentence. So it doesn't meet the definition of a de facto life sentence. But as to, back to the Holman factors, chronological age here is almost as old as possible. It was two weeks shy of nothing in the record that states the defendant is particularly immature or couldn't appreciate the consequences of his actions. In fact, he doesn't take responsibility for his actions at any point, even all the way through the statement in allocution where he denies any involvement again and doesn't apologize to the victim or the victim's family or the victim's friends. He had a relatively stable home environment or nothing indicates to the contrary. There's nothing that indicates he was pressured into this by any family or friends. And finally, he's only been out of custody for eight months. What difference does it make or how do you suggest he has a stable home environment? We don't know what his home environment was. He wasn't in it. There were letters from family members as to where he stays and things of that nature. And again, there's nothing in the record to suggest otherwise. But most importantly, maybe besides the chronological age here, the trial court discussed at length that the defendant has no rehabilitative potential. He's been in custody since the age of 13 almost constantly, takes only a few months to commit another crime and be sent back to juvenile DOC. And in violation of probation when he committed this murder, he removed his ankle bracelet in Chicago, went down to Champaign to sell drugs, ended up shooting an innocent unarmed man point blank where a witness stated that he looked happy and normal directly after shooting him, a man that he didn't know. So the circumstances of this murder also come, counsel submits that it was not a particularly heinous murder. I would submit to the contrary and the trial court went through the circumstances of this murder in sentencing the defendant. So as Stafford notes, Stafford made a specific point of recognizing that the trial court stated it considered counsel's arguments, the testimony at sentencing, the circumstances of the crime, the evidence at the trial and the PSI report. Stafford didn't say this defendant is specifically permanently incorrigible or this defendant has no, impossible to rehabilitate this defendant. But their sentencing conveyed those sentiments and that's what the sentencing in this case did too. Even though, as I argued first, this is not a de facto life sentence even if it is considered that. Holman, pursuant to Holman, this quote passes constitutional muster. Mr. McNeil, let me ask you. Does it matter that Holman is in a different procedural posture in this case? Do you understand what I'm asking? Was it an initial post conviction petition? Holman was a So they were dealing with the cause and prejudice test. Here, the successive post conviction petition was allowed. Does that make any difference? It doesn't. I mean, procedurally it's rather odd. Again, opposing counsel points out, most of the time if a court recognizes that the cause and prejudice test is passed, they a lot of times simultaneously pass it through the first stage of the post conviction petition or pass it to the second stage. The trial court did not do this in this case, but this was not an error per se procedurally. The plain language of the post conviction act lays out the familiar three stage procedure for all petitions, not just one. The petition filed goes through the first stage of analysis within 90 days. That's when the trial court determines whether it's frivolous or patently without merit. The Supreme Court in Smith, which I cited, held that same thing. The cause and prejudice analysis happens prior to the familiar three stages of post conviction proceedings. So here, procedurally, the trial court didn't err. If they erred at all, it was in granting leave to file this petition in the first place. Because they determined correctly that the defendant wasn't prejudiced because Miller didn't lie. Cause and prejudice, the determination thereof, is a higher standard than a jest of a constitutional claim, isn't it? Well, no. It's different. As Smith... As Smith pointed out, it's a distinction between whether cause and prejudice are alleged in the motion for leave or cause and prejudice is proven in the motion for leave to file a successful post conviction petition.  Well, that's a constitutional violation. Smith pointed out a great point. If cause and prejudice are already established based on the motion for leave to file a successful post conviction petition, not only is the first stage meaningless, all of the stages are meaningless. No, the second stage, there would be counsel. Well, and the state could respond, but if the trial court is establishing that cause and prejudice were not only alleged sufficiently, but proven, then there would be no reason for any of the three stages of post conviction proceedings after that. It's already been determined that the defendant's been prejudiced. That's not the point. The point of a cause and prejudice analysis is whether cause and prejudice are sufficiently alleged. And here, the trial court seems to have relied on Miller and the Illinois Supreme Court case Davis, which was a mandatory life without parole sentence, just like Miller. So, in that case, prejudice was a foregone conclusion. But here, in Holman, in Evans, in Jackson, in Johnson, all the cases I cited, prejudice was not a foregone conclusion because this wasn't a de facto life sentence. Miller didn't apply. So, if there was any error in this case, it was an error in the defendant's favor. This got one step further than it should have. He should have been denied leave to file this successive petition. And if there are no more questions, thank the court. Thank you, Mr. McNeil. Mr. Matthews, rebuttal argument. Justice Turner, I wanted to address that quote. It's from Montgomery, which came after Miller, the United States Supreme Court. And it's also cited in my brief on page 19. Is that your initial brief? Yes. Now, the state argues for, using the Social Security Administration's 82 years, using that, none of the cases where they found de facto life would have gone through, which are, or none of the, not none of the, but several of the, Buffer, for example, was 68 years, and Sanders was 66 years, Ortiz, 75 years. In all three of those cases, the first district found that it was a de facto life sentence. And those are all less than the 82 year that the state advocates for. Further, the state can't cite a single appellate authority or Illinois Supreme Court case which advocates for using that method. And here, we aren't asking for Falonzo's immediate release. All we're asking for is a sentencing hearing that considers the fact that he was a juvenile, considers the attributes that are involved with being a juvenile. We're not asking for him to be released after 20 years on murder. He can still be sentenced to an appropriate amount that, once the court considers that he's a juvenile. Also, I believe the court asked if there were any aggravating factors, and the only aggravating factors that the court seemed to consider was deterrence, and that's not an appropriate factor to be considering for a juvenile. In Montgomery, the court stated that deterrence rationale likewise does not suffice, since the same characteristics that render juveniles less culpable than adults make them less likely to consider potential punishment. So that the court considered basically the only thing in aggravation to be deterrence and gave him a sentence five years from the max shows that the court didn't appropriately consider the juvenile characteristics involved. And the state cites several times the Stafford comparing this case. Stafford is a much different case, and the defendant there from the age of eight exhibited signs of irretrievable depravity, saying he wanted to be a murderer, playing like he was stabbing people. That's at the age of eight. He sexually assaulted his siblings. And even before the offense, there was 17 or several different times that he was in and out of psychiatric facilities. That's not what Belanzo is. This is a case where he had two prior drug offenses and the murder, which was not a very heinous murder. We therefore ask your honors that you remand this cause for a new sentencing hearing. Thank you. Thank you counsel. The case will be taken under advisement and a written decision shall issue.